**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DANTE WHITE,

        Plaintiff,

  - v -               Civ. No. 9:15-CV-0640
                     (TJM/DJS)
NATHAN H. YORK, *et al.*,

         Defendants.

**APPEARANCES:**           **OF COUNSEL:**

DANTE WHITE
Plaintiff, *Pro Se*
15-A-1975
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, New York 12051

LEMIRE, JOHNSON LAW FIRM       GREGG T. JOHNSON, ESQ.
Attorneys for the Defendants         BRADLEY J. STEVENS, ESQ.
P.O. Box 2485
2534 Route 9
Malta, New York 12020

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

  *Pro se* Plaintiff Dante White commenced this action, pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq.*, claiming that his religious rights were violated at Warren County Correctional Facility ("WCCF"). Dkt. No. 1, Compl. Presently before the Court is Defendants' Motion for Summary Judgment. Dkt. No. 20, Defs.' Mot. Summ. J. Plaintiff has filed a Response and Defendants have filed a Reply. Dkt. Nos. 22, Pl.'s Resp. & 23, Defs.' Reply. For the reasons that follow, the Court recommends

that Defendants' Motion be **granted**.

## I. BACKGROUND[1]

Plaintiff is a Rastafarian and represents that he has followed Rastafarianism for most of his life. Defs.' SMF at ¶ 5. Around 2013, he began to practice Rastafarianism in greater depth. Dkt. No. 20-1, Decl. of Bradley Stevens, dated Apr. 21, 2016, Ex. F, Dep. of Dante White, dated Feb. 9, 2016 ("Pl.'s Dep."), at p. 35. As part of his practice, Plaintiff would pray daily and had once attended a church in the Bronx. *Id.* at pp. 53 & 124-25.

Relevant to this case is Plaintiff's dietary beliefs. Haile Selassie, the founder of Rastafarianism, followed a strict diet of fish and vegetables, but his teachings did not direct his followers to adhere to the same diet. Defs.' SMF at ¶ 8. Plaintiff states that different Rastafarians follow different diets; some are vegetarians and some eat meat. Pl.'s Dep. at pp. 39-40. According to Plaintiff, the choice of diet is part of Rastafarian beliefs, but it is up to the individual to choose what to eat. *Id.* at pp. 40-42. The vegetarian Rastafarian diet is called the "Ital" diet. *Id.* at p. 49. Plaintiff is not a vegetarian and tries to eat "natural" or "unprocessed" foods, including meats. *Id.* at pp. 41-42. He avoids foods that are "not pure" and that he feels are "not good for [his] body." *Id.* at

---

[1] Under Local Rule 7.1(a)(3), on a motion for summary judgment a non-movant must respond to the movant's statement of material facts "by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" and "set forth a specific citation to the record where the factual issue arises." N.D.N.Y. L.R. 7.1(a)(3). "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.* Plaintiff's Counter-Statement of Material Facts fails to properly respond to Defendants' Statement of Material Facts and is not supported by citations to the record. *See* Pl.'s Resp. Nonetheless, in deference to Plaintiff's *pro se* status, the Court has opted to review the entire summary judgment record in order to determine the undisputed material facts. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (noting court's "broad discretion to determine whether to overlook a party's failure to comply with local court rules"). The Court will cite to the facts as set forth in Defendants' Rule 7.1 Statement of Material Facts only when properly supported by the record. Dkt. No. 20-13, Defs.' Rule 7.1. Statement of Material Facts ("Defs.' SMF"); *see also GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 329 (N.D.N.Y. 2013) ("Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions.") (citing *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)).

p. 42. Among the foods that Rastafarian beliefs teach are bad for the body are beef, pork, and seafood, except for fish. *Id.* Outside of the correctional facility, Plaintiff regularly eats goat, chicken, ox tails, fish, and peas and rice. *Id.* at p. 46.

On September 18, 2014, Plaintiff was received at WCCF. Defs.' SMF at ¶ 1. At that time, Plaintiff did not request any meal accommodations. *Id.* at ¶ 18. Sometime in October or November 2014, Plaintiff began requesting a Rastafarian diet from on-duty corrections officers, who told him they would look into it. Pl.'s Dep. at pp. 60-61. At that point, Plaintiff claims that he was skipping the meals they were providing him three or four days a week. *Id.* at p. 98. He states that he did not know the correct procedure for requesting a religious meal when he first arrived at the facility. *Id.* at p. 60.

On December 2, 2014, Plaintiff submitted a grievance that complained, in part, that he was not receiving religious meals. Dkt. No. 20-5, Stevens Decl., Ex. D, at p. WC000131. On December 5, Plaintiff voided the part of his grievance requesting religious meals after a corrections officer talked with kitchen staff, and Plaintiff's meals were changed to meet his religious beliefs. *Id.* at p. WC000132. Plaintiff began receiving vegetarian meals that were consistent with the Ital diet. Pl.'s Dep. at pp. 61 & 118.

On December 23, 2014, WCCF adopted a new procedure for assessing religious meal requests. Dkt. No. 20-9, Aff. of Nathan York, dated Apr. 19, 2016, at ¶ 12. Under this procedure, inmates requesting religious meals were required to complete a religious diet form and then undergo an interview to determine whether they had a sincerely held religious belief. *Id.* at ¶ 12. The purpose of the sincerity interview was not to determine the accuracy of the inmate's beliefs, but rather to determine whether the inmate's sincerely held beliefs were related to their request for an

accommodation. Dkt. No. 20-11, Aff. of Ryan Tourge, dated Apr. 18, 2016, at ¶ 4.  The interviews were conducted in order to deny requests for religious meals that were not based on sincerely held beliefs, but that were inspired by other motivations.  *Id.* at ¶ 5.  WCCF officials believed that many of the requests they were receiving for religious meals were based on the assumption that the religious meals were of better quality.  *Id.* at ¶ 5.

Plaintiff continued to receive vegetarian meals throughout December, and he admits that the meals were consistent with his religious beliefs.  *Id.* at p. 117.  Plaintiff claims, however, that the vegetarian diet caused him digestive problems.  *Id.* at p. 118.  Furthermore, he did not want a vegetarian diet because he was not a vegetarian.  *Id.* at pp. 117 & 121.  Plaintiff spoke to a nutritionist about switching from the vegetarian diet to a diet including unprocessed meats.  *Id.* at p. 118.

On January 6, 2015, Plaintiff, in accordance with the new procedure, filled out a "request for a religious diet" form, requesting a diet including unprocessed meats.  Defs.' SMF at ¶ 35; Dkt. No. 20-3, Stevens Decl., Ex. B.  On January 8, 2015, Defendant Correction Officer ("C.O.") Tourge conducted a sincerity interview with Plaintiff in accordance with WCCF's religious meals procedure.  *Id.* at ¶ 36.  In the interview, C.O. Tourge asked Plaintiff how long he had been practicing Rastafarianism, which Plaintiff answered by stating that he had "been Jamaican all [his] life." Stevens Decl., Ex. B at WC000002.  C.O. Tourge found that Plaintiff "evaded" his questions about his religious reasons for the diet he was requesting.  *Id.*  C.O. Tourge further notes that Plaintiff did not state in the interview that he had been provided a religious dietary accommodation at any other point in his incarceration history.  Tourge Aff. at ¶ 9.

C.O. Tourge also reviewed Plaintiff's commissary purchases in connection with the

interview. *Id.* Plaintiff's commissary purchases revealed that he had repeatedly purchased processed meats. Specifically, Plaintiff had purchased, *inter alia*, beef cheese sticks, hot n' spicy beef sausages, and Slim Jims on December 1, December 14, December 23, December 30, 2014, and January 6, 2015. Defs.' SMF at ¶¶ 41-45. Plaintiff states that he purchased these foods to supplement his meals. Pl.'s Dep. at pp. 83-84. He further states that purchasing these foods had "nothing to with the belief, [his] practices." *Id.* at p. 87.

Based on his interview and review of Plaintiff's commissary purchases, C.O. Tourge determined that Plaintiff did not have a sincere religious belief and Plaintiff's request for religious meals was accordingly denied. Stevens Decl., Ex. B. In addition to finding that Plaintiff lacked a sincere religious belief, Defendants explain that the vendor WCCF received food from only offered kosher or vegetarian alternatives for inmates with dietary restrictions. Dkt. No. 20-10, Aff. of Michael Gates, dated Apr. 18, 2016, at ¶ 18. There was no option for a unprocessed meats diet, and providing such a diet would require staff to individually purchase items for Plaintiff. *Id.* at ¶ 23. Defendants claim that the unprocessed meats diet Plaintiff was requesting was not practical or financially feasible. *Id*. at ¶ 23.

On January 9, 2015, Plaintiff submitted a second grievance complaining about his vegetarian diet. Stevens Decl., Ex. D at p. WC000157. The grievance was investigated and in an interview with Plaintiff, he stated that he was trying to discontinue the vegetarian diet because he was not a vegetarian. *Id.* at p. WC000160. As of January 14, 2015, the investigator noted that Plaintiff's vegetarian diet had been discontinued. *Id.* Plaintiff was transferred to Coxsackie Correctional Facility on May 14, 2015. Defs.' SMF at ¶ 64. Plaintiff did not request any religious accommodation at Coxsackie, although he claims that he did not do so in order to avoid being

identified as a Rastafarian and caught up in gang conflicts. Pl.'s Dep. at p. 58.

In his Complaint, Plaintiff names Nathan York, the Warren County Sheriff, Captain Michael Gates, and C.O. Tourge as Defendants. Compl. The basis of Plaintiff's claim is that the Defendants violated his religious rights when they denied his request for the diet he believed was required by his religion, which consisted of unprocessed foods and included meats. *See* Pl.'s Dep. at pp. 50, 61, 117, & 119. Plaintiff requests monetary damages. *Id.* at p. 123.

In support of their Motion, Defendants argue that: (1) Plaintiff failed to exhaust his administrative remedies; (2) summary judgment is appropriate because (a) Plaintiff failed to demonstrate a sincerely held religious belief in receiving a diet of unprocessed meats; (b) Defendants had a legitimate penological interest in not providing the diet Plaintiff requested; and (c) Plaintiff, at most, suffered *de minimis* harm; (3) alternatively, Defendants are entitled to qualified immunity; (4) Defendants York and Gates were not personally involved in any alleged constitutional violations; and (5) Plaintiff's RLUIPA claims should be dismissed because monetary damages are not recoverable under RLUIPA. Dkt. No. 20-12, Defs.' Mot. Summ. J.

## II. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in

accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*,

the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

#### A. Plaintiff's RLUIPA Claims

In addition to his First Amendment claims brought under 42 U.S.C. § 1983, Plaintiff brings this action under RLUIPA. Defendants argue that Plaintiff's RLUIPA claims must be dismissed because Plaintiff's claims for injunctive and declaratory relief are moot and claims for monetary damages are not authorized under RLUIPA. Defs.' Mem. of Law at p. 20. The Court agrees. "In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). Plaintiff was transferred from WCCF to state custody on May 14, 2015. Defs.' SMF at ¶ 64. Plaintiff's claims for injunctive and declaratory relief are therefore moot.[2]

Plaintiff cannot bring a claim for monetary damages under RLUIPA. The Supreme Court has held that "RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (citing *Sossaman v. Texas*, 131 S. Ct. 1651, 1663 (2011)). Accordingly, the Court recommends that

---

[2] Indeed, at his deposition, Plaintiff appeared to withdraw his request for injunctive and declaratory relief. Pl.'s Dep. at p. 123.

Plaintiff's RLUIPA claims be **dismissed**.

### B. Plaintiff's Free Exercise Claims

*1. Legal Standard*

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). Among the rights prisoners retain under the Free Exercise clause is the right "to receive diets consistent with their religious scruples." *Benjamin v. Coughlin*, 905 F.2d 571, 579 (2d Cir. 1990) (quoting *Kahane v. Carlson*, 527 F.2d 492, 495 (2d Cir. 1975)).

A prisoner's free exercise rights are balanced against the "interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* at 574. A prisoner's free exercise claim is therefore "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Farid v. Smith*, 850 F.2d 917, 925 (2d Cir. 1988) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)); *see also Ford v. McGinnis*, 352 F.3d at 588. Thus, a prison regulation that impinges upon an inmate's constitutional rights may be valid, despite such encroachment, if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Farid v. Smith*, 850 F.2d at 925. The application of a lower reasonableness standard is consistent with the notion that "evaluation of penological objectives is committed to the considered judgment of prison administrators, 'who are actually charged with and trained in the running of the particular institution under examination.'" *O'Lone v. Estate of Shabazz*, 482 U.S. at 349 (quoting *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)).

The Second Circuit has articulated the following standard for assessing Free Exercise claims: "(1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective." *Farid v. Smith*, 850 F.2d at 926. Additionally, the Second Circuit has several times assumed, without deciding, that a prisoner must establish, as a threshold requirement, that the disputed conduct substantially burdened his sincerely held religious beliefs. *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014); *Salahuddin v. Goord*, 467 F.3d at 275 n.5; *Ford v. McGinnis*, 352 F.3d at 592. Although it is uncertain whether the substantial burden test still applies, this Court, erring on the side of caution, will assume that Plaintiff must show a substantial burden of the purposes of his Free Exercise claim. A state policy or action imposes a substantial burden where it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (quoting *Thomas v. Review Bd. of the Indiana Employment Sec. Div.*, 450 U.S. 707, 718 (1981)).

If the inmate establishes that prison authorities substantially burdened his sincerely held religious beliefs, the court must consider the four factors set forth in *Turner v. Safley*, 482 U.S.78 (1989) in order to evaluate whether the restriction is "reasonably related to legitimate penological interests":

> (1) there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it[;]
> (2) whether there are alternative means of exercising the right that remain open to prison inmates[;]
> (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally[; and]
> (4) the absence of ready alternatives is evidence of the reasonableness of a

prison regulation.
*Turner v. Safley*, 482 U.S. at 89-91 (citation omitted).

"[O]nce prison officials put forward a legitimate penological interest to justify an infringement up a prisoner's religious free exercise, the burden remains with the prisoner to 'show that these [penological] concerns were irrational.'" *Ford v. McGinnis*, 352 F.3d at 595 (quoting *Fromer v. Scully*, 874 F.2d 69, 74 (2d Cir. 1989)).

### 2. *Sincerely Held Religious Belief*

Defendants argue that Plaintiff has failed to demonstrate that he had a sincere religious belief in receiving a diet of unprocessed meats. Defs.' Mem. of Law at pp. 13-15. Defendants specifically cite to evidence that Plaintiff failed to identify himself as Rastafarian when he was booked into WCCF; never requested a religious meal accommodation at any other point in his incarceration since 2010; did not skip meals in order to avoid eating foods that violated his purported religious beliefs; purchased processed meats, including Slim Jims and hot n' spicy beef sausages, through the commissary; and evasively answered Defendant Tourge's questions and was unable to explain the religious reasons for the diet he requested. *Id.* Defendants argue that Plaintiff's request for a diet of unprocessed meats merely expressed his personal taste preferences or his cultural or ethnic heritage. *Id.* at pp. 11-12 & 15.

"In determining whether a prisoner's particular religious beliefs are entitled to free exercise protection, the relevant inquiry is not whether, as an objective matter, the belief is 'accurate or logical.' Instead, the inquiry is 'whether the beliefs professed by a [claimant] are *sincerely held* and whether they are, in his own scheme of things, religious.'" *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (citations omitted). Recognizing that courts are "singularly ill-equipped to sit in judgment on the verity of an adherent's religious beliefs," the Second Circuit has "jettisoned the

*-11-*

objective, content-based approach previously employed to define religious belief, in favor of a more subjective definition of religion, which examines an individual's inward attitudes towards a particular belief system." *Ford v. McGinnis*, 352 F.3d at 588 & 589 (quoting *Patrick v. LeFevre*, 745 F.2d 153 (2d Cir. 1984)).

On the one hand, it is clear that Plaintiff's professed beliefs are religious in nature. As Plaintiff stated at his deposition, choice of diet is part of practicing Rastafarianism; in Plaintiff's interpretation, it means to eat foods that are "pure" and "good for [his] body." Pl.'s Dep. at pp. 42 & 44. Defendants argue at length that Plaintiff's diet was a "personal preference" and suggest that he failed to demonstrate that his preferred diet was required by Rastafarianism. *See* Defs.' Mem. of Law at pp. 11-12 & 15. It is not the Court's obligation, however, to determine the "objective accuracy" of Plaintiff's beliefs. *See Jackson v. Mann*, 196 F.3d at 320. The Court only needs to determine that his beliefs were "religious in nature," which is established by his statements that his diet is part of practicing his religion. *See* Pl.'s Dep. at p. 42. On the other hand, it is questionable whether Plaintiff's professed belief was sincerely held. Namely, the evidence shows that Plaintiff voluntarily purchased processed meats from the commissary—items that violated his professed dietary beliefs. At his deposition, Plaintiff admitted that he purchased these items to supplement his diet, but stated that the purchases had "nothing to do with the belief, my practices."[3] *Id.* at p. 87. Although this evidence certainly tends to undercut the sincerity of Plaintiff's beliefs, the sincerity of an individual's beliefs is a fundamentally an issue of fact. *See Patrick v. LeFevre*, 745 F.2d at

---

[3] The Court notes that Plaintiff asserts in his Response to Defendants' Motion that he did not consume any of the processed meat products that he purchased, but that instead, he exchanged those items with other inmates. Pl.'s Resp. at pp. 9-10. These allegations contradict Plaintiff's sworn deposition testimony that he purchased those items to supplement his diet. "The rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony." *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991).

159-60. Therefore, notwithstanding the apparent inconsistencies of Plaintiff's actions with his professed beliefs, there are material issues of fact as to Plaintiff's sincerity that must be resolved by the factfinder. The Court will assume for the purposes of this Motion that Plaintiff has established a sincerely held religious belief.

### 2. *Substantial Burden*

"[C]ourts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." *McEachin v. McGuinnis*, 357 F.3d 197, 203 (2d Cir. 2004). Here, Plaintiff was incarcerated at WCCF from September 18, 2014 until May 14, 2015. Defs.' SMF at ¶¶ 1 & 64. Plaintiff requested religious meals sometime in October or November 2014, Pl.'s Dep. at p. 60, but only began receiving vegetarian meals that complied with his beliefs on December 5, 2014. Stevens Decl., Ex. D at p. WC000132. Although Plaintiff admits that the vegetarian meals met his religious beliefs, he continued to object to receiving them because he was not a vegetarian and requested instead a diet that included unprocessed meats. Defs.' SMF at ¶¶ 33-35. Plaintiff's request for that religious diet was ultimately denied on January 8, 2015, and from that point until his transfer to Coxsackie on May 14, he received standard, non-religious meals that he claims violated his religious beliefs. *Id.* at ¶ 50. Plaintiff asserts that the diet he was provided made him feel that he was "not following his religion seriously." Pl.'s Dep. at p. 119. Furthermore, Plaintiff claims that he would skip meals because there were certain foods that he "couldn't allow into his body," although it is unclear from the record how often he would skip meals. *Id.*

Defendants argue that the record establishes that burden on Plaintiff's religion was *de minimis*. Defs.' Mem. of Law at pp. 16-17. Defendants rely on a line of district court cases that

have held that isolated deprivations of religious meals only impose *de minimis* burdens on a inmate's Free Exercise rights. *See id.* (citing, *inter alia*, *Cato v. Ramos*, 2012 WL 4113187, at *6 (W.D.N.Y. Aug. 10, 2012) (finding that deprivation of fifteen religious meals over a two-year period constituted at most a *de minimis* deprivation)). That line of cases, however, has been criticized by the Second Circuit. *See Williams v. Does*, 639 F. App'x 55, 57 (2d Cir. 2016). In *Williams*, the Second Circuit held that the inmate's allegation that he was deprived of five religious meals over the course of one month stated a substantial burden on his religious practice. *See Skates v. Shusda*, 2016 WL 3882530, at *4 (N.D.N.Y. May 31, 2016) (citing *Williams v. Does*, 639 F. App'x at 57). Furthermore, unlike the cases relied upon by Defendants, Plaintiff is complaining of the deprivation of religious meals over several months, not one or two isolated incidents.

Thus, based on the foregoing, the Court finds for the purposes of this Motion that Plaintiff's statements that Defendants' provision of non-religious meals caused him to violate his religious beliefs are sufficient to establish that his religious practice was substantially burdened.

### 3. Legitimate Penological Interest

The Court now turns to the factors set forth in *Turner* to assess whether Defendants' denial of Plaintiff's requests for a diet of unprocessed meats was reasonably related to a legitimate penological purpose. The Court notes "the wide-ranging deference to be accorded the decisions of prison administrators" because "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 126 (1977).

As to the first *Turner* factor, Defendants argue that it was not "financially or practically feasible" to accommodate Plaintiff's individual dietary request. Defs.' Mem. of Law at p. 16.

Defendants explain that the vendor WCCF obtains food from provides kosher or vegetarian options to accommodate inmate's dietary or religious needs. Gates Aff. at ¶ 18. There is no option through WCCF's vendor for the diet of unprocessed meats that Plaintiff was requesting. *Id.* In order to provide Plaintiff with a diet of unprocessed meats, a WCCF officer would have to travel to a grocery store and purchase foods that met Plaintiff's requests. *Id.* at ¶ 23. Defendants attest that it would "cause a serious financial restraint" to accommodate an inmate's particular dietary needs in this manner. *Id.* at ¶ 17.

"[I]t is well-established that DOCS has a legitimate interest in cost-effectively meeting the religious dietary needs of multiple inmate groups." *Williams v. Fisher*, 2015 WL 1137644, at *26 (N.D.N.Y. Mar. 10, 2015) (quoting *Majid v. Fischer*, 2009 U.S. Dist. LEXIS 71616, at *18-19 (S.D.N.Y. July 31, 2009)). Specifically, there is "a rational nexus . . . between a prison's dietary policies and its legitimate administrative and budgetary concerns." *Hamilton v. Smith*, 2009 WL 3199520, at *5 (N.D.N.Y. Sept. 30, 2009) (citation omitted). The Court finds that Defendants' Affidavits are sufficient to show that the decision to deny Plaintiff a diet of unprocessed meats was rationally related to legitimate penological purposes. The provision of standard menus, including options for religious and dietary accommodations, through WCCF's food vendor is rationally related to administrability and financial concerns. The specific diet Plaintiff requested could not be provided through WCCF's food vendor and would have required WCCF to individually purchase foods for Plaintiff. As Defendants argue, this would have placed unreasonable financial and administrative burdens on the facility. *See Hamilton v. Smith*, 2009 WL 3199520, at *4 (accepting the defendants' argument that it was "not a reasonable demand that prison officials supply every inmate with their personal diet request for every meal"). Accordingly, Defendants' decision to deny

Plaintiff's dietary request was rationally related to legitimate government objectives.

The second *Turner* factor, "whether there are alternative means of exercising the right that remain open," also weighs in favor of Defendants. *See Turner v. Safley*, 482 U.S. at 90. Here, WCCF had an option for a vegetarian diet that Plaintiff was provided with. Plaintiff admitted that the vegetarian diet did not violate his religious beliefs. Pl.'s Dep. at p. 117. Plaintiff rejected the vegetarian diet, claiming that it made him sick and that he was not a vegetarian, but it is nonetheless true that Defendants did provide him with an alternative diet that was consistent with his religious beliefs.

As to the *Turner* third factor, whether "accommodation of the asserted right will have a significant 'ripple effect' on fellow inmates or prison staff," *Turner v. Safley*, 482 U.S. at 90, Defendants have asserted that granting "specialized religious meals to a single inmate" would lead other inmates to request specialized meals. *See* Gates Aff. at ¶ 17. Defendants believe the possibility of such a "ripple effect" is borne out by previous events at WCCF. Specifically, in the Fall of 2014, "there was a dramatic surge in the number of inmates who were requesting religious dietary accommodations." *Id.* at ¶ 14. WCCF staff learned that many of the requests were fraudulent and based on the belief that religious meals were larger, as well as being sealed. *Id.* at ¶¶ 14-15. Mindful of the deference due to the Defendants, the Court credits Defendants' concerns that granting Plaintiff specialized meals could influence other inmates' behavior. *See Hamilton v. Smith*, 2009 WL 3199520, at *6.

Finally, at the fourth *Turner* factor, the Court must consider whether there are any alternative means of facilitating Plaintiff's dietary requests while only imposing a *de minimis* effect on WCCF's valid penological interests. *Id.* Plaintiff has not offered any alternative means for him to receive

his preferred diet other than having WCCF staff individually purchase foods for him. Accordingly, this factor also weighs in favor of Defendants.

Thus, having considered the *Turner* factors, the Court finds that Defendants have established that they had legitimate penological reasons for denying Plaintiff's request for a unprocessed meats diet. The burden therefore shifts to Plaintiff to show that the penological concerns articulated by Defendants are irrational. *Ford v. McGinnis*, 352 F.3d at 595. Plaintiff has not produced any evidence to rebut the penological interests put forward by the Defendants. Accordingly, the Court recommends that Defendants' Motion for Summary Judgment be **granted**.[4]

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 20) be **GRANTED** and this action **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

---

[4] Having found that summary judgment is appropriate on the merits of Plaintiff's claim, the Court does not reach the remaining arguments raised in Defendants' Memorandum of Law.

Date: March 10, 2017
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge